**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Mark Degroat,<br><br>Plaintiff,<br><br>-against-<br><br>Daisy's Diner Food Corp. d/b/a Daisy's Diner,<br><br>Defendant. | Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Mark Degroat ("Plaintiff") brings this Class Action Complaint (the "Complaint") against defendant Daisy's Diner Food Corp. d/b/a Daisy's Diner ("Defendant"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1. For decades, countless consumers have registered their cellphones with the National Do Not Call Registry ("Registry") as "residential subscribers" and have relied upon that protection to ensure their privacy and ward off unwanted telemarketing.

2. By the same token, telemarketing firms have developed policies and practices to comply with their Do Not Call obligations for cellphone users on the Registry.

3. In addition, the FCC, Federal Trade Commission, state agencies and intrepid consumer lawyers alike have enforced the rights of cellphone users on the Registry.

4. And even despite the gruesome death of the *Chevron* doctrine, Americans relying only on their wireless telephone service continue to enjoy the protections that they have long enjoyed since the TCPA was enacted during the George H.W. Bush administration.

5. Because the TCPA has survived through generations of new technology in the field of telecommunications, the Plaintiff brings this Complaint against Defendant to stop Defendant from violating the TCPA and invading the privacy of Plaintiff and the putative classes (as defined below).

6. As alleged with specificity below, Defendant has transmitted unsolicited telemarketing text messages without his consent to Plaintiff's cellular telephone for the purpose of soliciting business from Plaintiff.

7. Defendant engaged in such unlawful behavior even though Plaintiff's cellular telephone number has been registered on the Registry for years.

8. By making such telephone solicitations, Defendant has invaded the personal privacy of Plaintiff.

9. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited text messages as well as an

award of statutory damages for himself and the class defined below, together with court costs, reasonable attorneys' fees.

## PARTIES

10. Plaintiff is an individual and citizen of New Jersey.

11. Upon information and belief, Defendant is, and at all times mentioned herein was, a foreign corporation with its principal place of business located at 452 5TH Avenue, Brooklyn, New York. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of New Jersey and within this judicial district.

## JURISDICTION AND VENUE

12. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction because this action arises under a federal statute.

13. The Court has personal jurisdiction over Defendant because: (i) Defendant conducts significant business in this District; and (ii) the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District..

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**THE TCPA**

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

16. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. As the Third Circuit has instructed, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)

18. Indeed, the Third Circuit has stated in a different context that "[a]lthough it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls." *Susinno v. Work Out World Inc*., 862 F.3d 346 (3d Cir. 2017).

19. The heart of the TCPA consists of two subsections: Sections 227(b) and 227(c) of Title 47 of the U.S. Code. This case, however, involves Section 227(c).

20. Section 227(c) required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1); *see also id.*§ 227(c)(2) (requiring the FCC to "prescribe regulations to implement

methods and procedures for protecting the privacy rights described in [§ 227(c)(1)] in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers”).

21. Section 227(c) simply “permit[s]” the FCC to “require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase.” 47 U.S.C. § 227(c)(3).

22. Yet the TCPA provides that, if the FCC “determines to require such a database,” then the regulations must “prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database.” 47 U.S.C. § 227(c)(3)(F).

23. As relevant here, telephone solicitation is defined as “the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.” 47 U.S.C. § 227(a)(4).

24. Section 227(c) also confers a private cause of action on any “person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection.” 47 U.S.C. § 227(c)(5).

25. The FCC exercised its authority under Section 227(c) by promulgating regulations that established a National Do Not Call Registry.

26. As Congress mandated, those regulations prohibit any "person or entity" from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

27. Moreover, the FCC's regulations prohibit any "person or entity" from "initiat[ing] . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d).

28. The TCPA also established the National Do-Not-Call Registry, as well as the requirement that all businesses that place calls for marketing purposes maintain a Company Specific "Internal" Do-Not-Call list ("IDNC list").

29. The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."

30. Unlike the definition contained within the Nationwide DNC rule, the Company Specific DNC definition of "telemarketing" does not include any exceptions.

31. Accordingly, there is no exception for calls made to a person with whom the caller has an established business relationship ("EBR") or calls to persons who have given prior express consent.

32. Moreover, even if an EBR did exist, a text recipient's "seller-specific do-not-call request ... terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

33. Company-specific do-not-call requests must be honored for five years from the time the request is made, and within a reasonable time. 47 C.F.R. § 64.1200(d)(3).

34. Whether a business honored a consumer's do-not-call request in a reasonable amount of time, and the reasonableness of the business's response is a question of fact for the jury to decide.

35. Sellers must coordinate the do-not-call requests received by their telemarketers, so that all telemarketing calls on behalf of the seller cease if a consumer makes a do-not-call request to one of the seller's telemarketers.

36. Any company, or someone on the company's behalf, who calls or transmits a text to a member of the company IDNC violates the TCPA.

37. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief

**<u>Text Messages Are Considered Calls</u>**

38. The TCPA's stated intent is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

39. Both the TCPA and the Federal Regulations define a "telephone solicitation" as "a telephone call ***or message*** for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15) (emphasis added).

**<u>Plain Meaning of the Statute</u>**

40. When the TCPA was enacted in 1991, the verb "to call" had the same meaning as it does today.

41. Based upon the definition of 'call' at the time of the TCPA's passage, there was no requirement that the communication via telephone be oral.

42. In other words, the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone.

43. In 2025, there are numerous modes of communicating by telephone; texting is just one such way "to communicate with or try to get into communication with a person by a telephone."

44. Thus, texting fits comfortably within the understood meaning of "call."

45. In the Third Circuit, courts have repeatedly and consistently held that the restrictions placed on "calls" govern texts pursuant to both §§ 227(b) and (c). *See Cole*, 2026 U.S. Dist. LEXIS 63254, *1 n.1 (finding that "nothing in the text, structure or purpose of the TCPA suggests the barring of text messages under §227(c)"); *Shelton v. Pro. Source Lending Grp. LLC*, 2025 U.S. Dist. LEXIS 46534, 2025 WL 817485, at *4 n.4 (E.D. Pa. Mar. 14, 2025) (concluding that "text messages are considered 'calls' for the purposes of §227(c) and its implementing regulations); *Perrong v. Chase Data Corp*., 2024 U.S. Dist. LEXIS 14907, 2024 WL 329933, at *2 (E.D. Pa. Jan. 26, 2024) (holding that texts are calls for the purposes of §§ 227(b) and (c)); *King v. Bon Charge*, 2025 U.S. Dist. LEXIS 267318, 2025 WL 3764039, at *11 (D. Del. Dec. 30, 2025) ("A text message counts as a 'call[]'" under § 227(c)); *see also Newell v. RxLink Inc*., No. 2:25-cv-4270 (E.D. Pa. Mar. 12, 2026) (mem.) (order denying defendant's motion to dismiss wherein plaintiff alleged he received unsolicited texts in violation of § 227(c))

46. On March 31, 2026, Judge Martini concluded that "telephone call" can encompass text messages for purposes of § 227(c)(5) and 47 C.F.R. § 64.1200(d). In making this finding, he noted the majority of courts consider § 227(c)(5)'s protection against "calls" to include text messages. citing *Bradshaw v. CHW Group, Inc*., 763 F. Supp. 3d 641 n.5 (D.N.J. 2025) ("Text messages are considered 'calls' for [§ 227(c)(5)] purposes."); *Champion v. Credit Pros Int'l Corp*., No. 21-10814,

2023 U.S. Dist. LEXIS 84427, 2025 WL 3452354 (D.N.T. May 15, 2023) (denying motion to dismiss § 227(c)(5) claim based on receipt of text messages); *Zelma v. Penn LLC*, No. 19-8725, 2020 U.S. Dist. LEXIS 9615, 2020 WL 278763, at *6-7 (D.N.J. Jan. 17, 2020) (assuming that sending text messages to number on DNC registry was claim under § 227(c)(5)); *see also Hall v. Smosh Dot Com., Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (holding that under § 227(c), "Congress granted residential phone subscribers the right to create a private line, free from unsolicited calls and intrusive texts").

47. Indeed, Courts around the country have resoundingly found that a text message is a call. *See Alvarez v. Fiesta Nissan, Inc*., 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at *5 (S.D. Tex. Jan. 26, 2026) ("A text message therefore falls reasonably within the literal language of [§ 227(c)(5)]."); *Wilson v. MEDVIDI Inc*., 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (same); *Mey v. Liberty Home Guard, LLC*, 2026 U.S. Dist. LEXIS 739, at *15-18 (N.D.W. Va. Jan. 5, 2026) (same) (collecting cases); *Bosley v. Bradley Hosp. LLC*, 2025 U.S. Dist. LEXIS 183986, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) ("a text message constitutes a 'call' under the TCPA"); *Hudson v. Palm Beach Tan, Inc*., 2024 U.S. Dist. LEXIS 165676, 2024 WL 4190513, at *7-8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 164763, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) (same); *Williams v. Myler Disability,*

*LLC*, 2020 U.S. Dist. LEXIS 211914, 2020 WL 6693134, at *5 (W.D.N.C. November 12, 2020) (same).

**<u>Residential Telephone Subscribers</u>**

48. § 227(c) "protect[s] residential telephone subscribers ' privacy rights." 47 U.S.C. 227(c)(1) (emphases added).

49. For purposes of § 227(c) and 47 C.F.R. § 64.1200(d), "residential" telephone subscribers encompass wireless subscribers.

50. For more than two decades, cellphone users have been permitted by the FCC to register for the National Do Not Call Registry as 'residential subscribers." *Id*. at 203.

51. Americans have purchased cellphones on the assumption that their devices would be protected against unwanted telemarketing.

52. Telemarketing firms have developed policies and practices to comply with their Do Not Call obligations for cellphone users.

53. The FCC, Federal Trade Commission, and state agencies alike have enforced the rights of cellphone users on the Registry.

54. Moreover, the consensus in court decisions in the Third Circuit is that Do Not Call claims may apply to cell phones. *See Dudley v. Vision Solar, LLC*, No. 21-659, 2021 U.S. Dist. LEXIS 135609, 2021 WL 3077557, at *5 (E.D. Pa, July 21, 2021) (citing cases and denying motion to dismiss § 227(c) claim where plaintiff

alleged cell phones were for "residential purposes"); *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 U.S. Dist. LEXIS 5570, 2023 WL 166168, at *4-5 (D.N.J. Jan. 11, 2023) (same); *Cacho*, 739 F. Supp. 3d at 203 ("[A]n individual who registers her cellphone with the Do Not Call Registry is a residential telephone subscriber."); *Shelton*, 805 Fed. App'x. at 159 (affirming that plaintiff had standing to bring TCPA suit where unsolicited telemarketing calls were to personal cell phone); *Jackson*, 2024 U.S. Dist. LEXIS 8811, 2024 WL 184449, at *8 (agreeing with majority of cases that cell phone users may be "residential" telephone subscribers under § 227(c).

## FACTUAL ALLEGATIONS

55. Defendant is a food service business.

56. In Defendant's overzealous attempt to market its services, however, Defendant knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls.

57. Defendant also patently violated (and continues to violate) the TCPA.

58. Through this method, Defendant has invaded the personal privacy of Plaintiff and disturbed the solitude of Plaintiff.

## FACTUAL ALLEGATIONS AS TO THE PLAINTIFF

59. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in ending in - 0449 ("Cell").

60. Plaintiff's Cell was registered with the Registry on January 27, 2021.

61. Plaintiff registered the Cell on the Registry to obtain solitude from unwanted telemarketing and solicitation calls.

62. Plaintiff, ***himself*** and <u>not</u> any other person or third party, registered the Cell with the Registry.

63. Plaintiff is the sole user and/or subscriber of his Cell.

64. Plaintiff is financially responsible for phone service to his Cell.

65. Plaintiff's Cell is used solely for "residential" purposes.

66. The Cell is Plaintiff's ***personal*** phone that he uses for personal, family, and household use.

67. Indeed, Plaintiff maintains no landline phones at his residence and has not done so for at least many years.

68. Plaintiff relies on his Cell to communicate with friends and family.

69. Plaintiff also solely performs domestic tasks with his Cell including sending and receiving emails and text messages.

70. Plaintiff uses his Cell to order food deliveries.

71. Plaintiff also uses his Cell to search various websites for non-business related hobbies and topics of interest to him.

72. Plaintiff does **<u>not</u>** use his Cell for business transactions.

73. Plaintiff's employer does **<u>not</u>** pay Plaintiff's phone bill.

74. Plaintiff does **not** use, and at no time used, the Cell for business or commercial purposes.

75. Plaintiff does **not** use his Cell for business reasons or business use and the number is **not** registered in the name of a business.

76. Plaintiff did **not** provide Defendant with a prior express invitation or permission to be contacted for marketing purposes.

77. Nevertheless, Defendant sent several illegal text messages to his Cell even though Defendant is required to check the Registry before telemarketing under 47 U.S.C. § 227(c)(3)(F).

78. Despite its obligations, Defendant unlawfully solicited Plaintiff on his Cell as alleged with specificity herein.

79. Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations to Plaintiff in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including 47 C.F.R. § 64.1200(c).

80. Discovery will clarify whether Defendant directly sent the text messages or agent(s) did so on its behalf.

81. Without having had the benefit of discovery to show otherwise, Plaintiff alleges that Defendant is directly liable for the unsolicited texts because they were transmitted directly by Defendant.

82. Alternatively, if some of the text messages were transmitted by third-party/parties on behalf of Defendant, then Defendant is vicariously liable for those communications.

83. On May 9, 2013, the FCC articulated that the doctrine of vicarious liability applies in the context of the TCPA.

84. Specifically, a seller may not avoid liability by outsourcing telemarketing to thirdparty agents or vendors:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC*, 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

85. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n.107.

86. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*, at 6593.

87. Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Defendant.

88. While Plaintiff alleges Defendant is directly liable based on what he knows and understands at this time, if he learns the texts were initiated by agent(s) acting on Defendant behalf, Plaintiff shall seek to hold Defendant vicariously liable for the same.

89. As alleged with specificity herein, Plaintiff received several text messages that advertised Defendant's promotions.

90. The texts messages contained links directly to Defendant's very own website and were for the purpose of offering Defendant's services.

91. Specifically, on November 22, 2024, Plaintiff received multiple text messages advertising Daisy Diner's Thanksgiving Dinner Menu from 718-516-2903.




92. Because Plaintiff never signed up for any type of promotion, Plaintiff immediately texted STOP.

93. In response, Plaintiff received a message "You are now opted out from Daisys Diner and will receive no further messages."




94. Unfortunately for Plaintiff, the messages did not stop.

95. Specifically, Defendant began inundating Plaintiff with advertising text messages.

96. The harassment began two years later, beginning in January 2026.

97. The telemarketing was transmitted from number (929)-658-7405.

98. The telemarketing was relentless advertising for holiday specials and sales that Plaintiff had no interest in.

99. For instance, Plaintiff received the following text messages with embedded hyperlinks to Defendant's website:




100. Similarly, Plaintiff received the following text messages:




101. Exasperated by this nonstop harassment, Plaintiff sent the following text message in April 2026:




102. In response, the Defendant just ignored this plea and sent Plaintiff another advertisement.

103. Just last month, Defendant sent Plaintiff yet another advertisement:




104.

105. Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

106. Specifically, these text messages are inextricably linked to Defendant because the shortURLS of the text messages link to marketing and advertising pages at Defendant's website.

107. Moreover, Defendant continued to transmit telemarketing text messages to Plaintiff over and over again even though Plaintiff begged Defendant to stop.

108. Unfortunately, the messages did not stop.

109. Defendant left Plaintiff with no choice but to file this lawsuit to prevent further harassment.

110. Based on the foregoing, Defendant does not maintain a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

111. Based on the foregoing, Defendant does not train their employees or agents who are engaged in telemarketing on the existence and use of any do-not-call list, as required by 47 C.F.R § 64.1200(d)(2).

112. Defendant failed to place Plaintiff on the do-not-call list, despite his requests not to be contacted.

113. Instead, Defendant continued to transmit text messages to his cellphone, in violation of 47 C.F.R § 64.1200(d)(3).

114. By its actions, Defendant also violated 47 C.F.R § 64.1200(d)(6).

115. Plaintiff properly alleges injuries in fact, which are fairly traceable to Defendant's unlawful acts, and are likely to be redressed by a favorable judicial decision.

116. Among other harms caused by the unlawful telemarketing text messages at issue, receiving the unwanted telemarketing resembles the kind of harm associated with intrusion upon seclusion.

117. Plaintiff's Prayer for Relief herein includes a request for damages for Defendant's unlawful telephone solicitations, as authorized by statute. *See* 47 U.S.C. § 227(c)(5).

118. These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff

## CLASS ACTION ALLEGATIONS

119. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Classes:

DNC Class

All persons within the United States (1) registered on the National Do Not Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

IDNC Class

All persons within the United States: (1) who received a telephone solicitation; (2) made by or on behalf of Defendant; (3) for the purpose of promoting Defendant's goods or services, (4) after making a do-not-

call request to Defendant; (5) within the four years prior to the filing of the Complaint.

120. Plaintiff reserves the right to modify the definition of the Classes as warranted as facts are learned in further investigation and discovery.

121. Plaintiff and the members of the Classes were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Classes via their cellular telephones, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and Class.

122. Plaintiff does not know the number of members in the Class, but believes the members of the Class number in the thousands, if not more.

123. Thus, the members of the Class are so numerous that joinder of all of them is impracticable, and this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

124. The members of the Class are ascertainable because the Class is defined by objective criteria and the Class members can be identified through Defendant's records or Defendant's agents' records and the National Do Not Call Registry.

125. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

126. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

127. Common questions for the Class include, without limitation:

a. Whether Defendant's conduct violated the TCPA;

b. Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

c. Whether Defendant transmitted text messages to consumers registered on the National Do Not Call Registry; and

d. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

128. As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class.

129. Plaintiff and the Class suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA, and suffered damages as a result of the Defendant's uniform unlawful and wrongful conduct. Absent a class action, the Class will continue to be damaged

and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

130. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions.

131. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

132. This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole.

133. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

134. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

135. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

136. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

137. Even if members of the Class could sustain such individual litigation, a class action would still be preferable because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

138. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**COUNT I**
**VIOLATIONS OF THE TCPA 47 U.S.C. § 227 *ET SEQ***

139. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

140. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA's implementing regulation 47 C.F.R. § 64.1200(c).

141. As a result of Defendant's negligent violations of 47 U.S.C. § 227 (c), Plaintiff and each member of the DNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

142. Plaintiff and each member of the DNC Class are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violations of 47 U.S.C. §§ 227 (c), pursuant to 47 U.S.C. § 227(c)(5).

143. Plaintiff and the DNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT II
## VIOLATIONS OF THE TCPA 47 U.S.C. § 227 *ET SEQ*

144. Plaintiff made requests to Defendant not to receive telemarketing text messages transmitted from Defendant.

145. Defendant failed to honor Plaintiff's requests not to receive telemarketing text messages transmitted from Defendant.

146. Based on the foregoing, Defendant has not instituted procedures for maintaining a list of persons, including but not limited to Plaintiff, who requested not to receive telemarketing text messages transmitted by Defendant or on their behalf, pursuant to 47 C.F.R. § 64.1200(d).

147. Because Plaintiff received more than one text message in a 12- month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

148. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

149. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA's implementing regulation 47 C.F.R. § 64.1200(c).

150. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

a. An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as Class Counsel;

b. An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA;

c. An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA, 47 U.S.C. § 227(c);

d. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, inter alia, an Order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

e. An award of statutory damages;

f. An award of treble damages;

g. An award of reasonable attorneys' fees and costs; and

h. Such other and further relief that the Court deems reasonable and just.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: June 5, 2026

**KAZEROUNI LAW GROUP, A.P.C.**

By: ______________________________

Ross H. Schmierer, Esq.
1 Eves Drive, Suite 111
Marlton, New Jersey 08053
(732) 588-8688
ross@kazlg.com

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: June 5, 2026

By: *s/ Ross H. Schmierer*
Ross H. Schmierer, Esq.